### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEANNETTE "JANNIE" OWANO,

       Plaintiff,

    v.

CHICAGO ZOOLOGICAL SOCIETY,
an Illinois for-profit corporation, d/b/a
BROOKFIELD ZOO and
INTERNATIONAL BROTHEROOD
OF TEAMSTERS LOCAL NO. 727,

       Defendants.

No. 22-cv-5426

Judge Franklin U. Valderrama

### ORDER

Plaintiff Jeannette Owano (Owano), worked for Defendant Chicago Zoological Society, who operates Brookfield Zoo (the Zoo), as a craftsman welder. Owano was also a member of Defendant International Brotherhood of Teamsters Local No. 727 (the Union) (together with the Zoo, Defendants). The Zoo terminated Owano's employment. Owano, a female, sued Defendants in the Circuit Court of Cook County, alleging a breach of the Illinois Arbitration Act, 710 ILCS 5/12 (the Act) against both Defendants (Count I), as well as a breach of the duty of fair representation by the Union (Count II). R. 1-1, Compl.[1] The Zoo removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), (b)(1). R. 1. In her Second Amended Complaint (SAC), which is currently before the Court, in addition to her claim for a breach of the

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Act, Owano also alleges that the Zoo colluded with the Union to aid its breach of the duty of fair representation (Count II), and brings claims against both Defendants for discrimination based on sex under 42 U.S.C. § 2000e-2 (Counts III and IV). R. 49, SAC.

Before the Court are Defendants' motions to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 50, Union Mot.; R. 52, Zoo Mot. For the reasons stated below, the Court grants Defendants' motions to dismiss.

## Background[2]

Owano is a member of the Union and a former employee of the Zoo. SAC ¶¶ 1, 5. Owano was employed by the Zoo as a craftsmen welder. *Id.* ¶ 5. The Union and the Zoo are parties to a collective bargaining agreement (CBA) that provides for the employment terms and conditions of the Union members who are Zoo employees. *Id.* ¶ 6. The CBA was in force in and effect from January 1, 2016 to December 31, 2020. *Id.* In 2020, the pandemic struck and affected the Zoo. *See id.* ¶ 14. As a result, the Zoo implemented a layoff and laid off 58 union workers in 2020. *Id.* Owano was one of the unlucky 58. *Id.* Eventually, every other laid off employee was recalled or reassigned. *Id.* Owano, however, was not called back to work or reassigned to another craftsman position. *Id.* Therefore, her employment was terminated with the Zoo. *Id.*

Owano informed the Union that she wanted to file a grievance regarding the Zoo's failure to recall her to work and not retaining her, as well as regarding

---

[2]The Court accepts as true all the well-pled facts in the Second Amended Complaint and draws all reasonable inferences in favor of Owano. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

mistreatment and discrimination she suffered as the only female welder. SAC ¶ 22. The Union filed a grievance on Owano's behalf, asserting that her job had been eliminated and that the Zoo had retaliated against her. *Id.* ¶ 23; R. 49-1, Grievance at 11. The Union moved the grievance to arbitration. SAC ¶ 23. According to Owano, the Union and Zoo's conduct during the arbitration signaled to the arbitrator that they jointly wanted to "rid each Defendant of a troublesome woman." *Id.* ¶ 24. As part of that conduct, the Union either failed to grieve or withdrew grievances that Owano wanted it to pursue, such as her failure to be recalled to work and which group she was part of at the Zoo, thereby making it appear that she was less senior than she actually was. *Id.* ¶¶ 16, 25.

On May 13, 2022 the Arbitrator issued his Arbitration Award (the Award), in which he concluded that (1) the Zoo did not violate the CBA when it laid Owano off; (2) Owano failed to prove any retaliation; and (3) the Union made a valiant effort to get Owano reinstated. R. 49-1, Arb. Decision at 12. Owano received a copy of the Award on May 22, 2022. SAC ¶ 15. She alleges that the arbitrator's decision was made "fraudulently, deceptively, and maliciously" in order to "arrive at the result desired by his benefactors," the Union and the Zoo. *Id.* ¶ 26.

Owano filed a charge with the United States Equal Opportunity and Employment Commission (EEOC) against the Zoo on March 20, 2023. SAC ¶ 117; R. 53-1, Zoo EEOC Charge. The EEOC issued Owano a right to sue letter on March 31, 2023. SAC ¶ 118; R. 49-2, Zoo Right to Sue. Owano also filed a charge with the EEOC against the Union on March 20, 2023. SAC ¶ 148; R. 51-1, Union EEOC Charge. The

EEOC issued Owano a right to sue letter on March 30, 2023. SAC ¶ 149, R. 49-3, Union Right to Sue. Owano then sued the Defendants in the Circuit Court of Cook County. The Zoo removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), (b)(1). R. 1.

The Zoo moved to dismiss Count I of the Complaint. R. 5. The Court set a briefing schedule on the motion to dismiss. R. 9. Owano then filed an Amended Complaint, R. 11, which mooted the pending motion to dismiss. R. 15. Defendants then filed motions to dismiss the Amended Complaint pursuant to Federal Rule 12(b)(6). R. 25, R. 27. The Court set a briefing schedule on the motions to dismiss. R. 29. The motions were fully briefed as of January 17, 2023. R. 38, 39. While the motions were pending, Owano sought leave to file a Second Amended Complaint, to add two new Tile VII claims. R. 46. The Court granted the motion, over Defendants' objections. R. 48. Defendants then filed motions to dismiss the Second Amended Complaint. R. 50, R. 52. These fully briefed motions are before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.     Arbitration Act (Count I)

In Count I, Owano seeks to vacate the Award as it was allegedly "procured by fraud, deceit, collusion or other illicit means pursuant to common law" and the Illinois Arbitration Act, 710 ILCS 5/12(e) (the Act). SAC ¶ 29.

The Zoo argues that Count I should be dismissed because the Act does not apply to arbitration awards pursuant to a collective bargaining agreement and Owano's claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA). R. 53, Zoo Memo. Dismiss at 4–5.

The Union for its part, similarly argues that the Act is inapplicable to cases involving arbitrations conducted pursuant to a collective bargaining agreement. R. 51-1, Union FAC Memo. Dismiss.[3] To the extent Count I is premised on the common

---

[3]The Union's memorandum in support of its motion to dismiss the SAC "incorporates and adopts herein its previous motion to dismiss with respect to" Counts I and II. R. 51, Union Memo. Dismiss. The Court, when granting Owano's motion for leave to file a second amended complaint, "allow[ed] Defendants to refile . . . motions to dismiss [the First Amended Complaint] as part of their responsive pleadings to the Second Amended Complaint." R. 48. Owano, in turn, stood on her earlier-filed responses to both Defendants' motions to dismiss Counts I and II of the First Amended Complaint for her arguments relating to Counts I and II. R. 58, Pl. Union Resp. at 1 n.1 (citing R. 35, Pl. Union FAC Resp.); R. 59, Pl. Zoo Resp. at

law as a basis for vacating the award, posits the Union, that contention fares no better. *Id.* at 6. The LMRA, argues the Union, preempts state tort claims "where the existence of a duty on the part of the defendant is dependent on an interpretation of a collective bargaining agreement." *Id.* (citing *Gelb v. Air Con Refrigeration & Heating, Inc.*, 826 N.E.2d 391, 398 (Ill. App. Ct. 2005)).

Owano counters that the Act did not abrogate the common law as a basis to vacate an arbitration award. R. 35, Pl. Union FAC Resp.; R. 36, Pl. Zoo FAC Resp. at 4–5. Owano asserts that she seeks to vacate the Award, not on the basis of the Act, but rather the common law. *Id.* Namely, that that the Award violates public policy. *Id.* The Court addresses each argument, to the extent necessary, in turn.

The Illinois Arbitration Act provides, in relevant part, that:

(a) Upon application of a party, the court shall vacate an award where: (1) The award was procured by corruption, fraud or other undue means. . . . (e) Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act.

710 ILCS 5/12. The Court agrees with Defendants that, under the plain language of the Act, the Act does not apply to any action to vacate an arbitration award entered as a result of a collective bargaining agreement, which is the case here. Zoo Memo. Dismiss at 5; Union FAC Memo. Dismiss at 5. That said, Defendants do not argue, indeed nor could they, that Owano cannot seek to vacate the Award on common law

---

1–2 (citing R. 36, Pl. Zoo FAC Resp.). Although the Zoo's incorporation of its previous memorandum to dismiss into one filing with its new arguments for dismissal of Counts III and IV made the Court's review easier, it will not fault the Union or Owano for standing on their previous filings.

grounds. Accordingly, the Defendants' motion to dismiss Count I is granted to the extent Owano seeks to vacate the Award under the Act.

The Court now turns to Defendants' argument that Owano's common law claim raised in Count I is preempted by Section 301 of the LMRA. Zoo Memo. Dismiss at 5–6; Union FAC Memo. Dismiss at 6–7. Section 301 of the LMRA establishes federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" without respect to the amount in controversy or citizenship of the parties. 29 U.S.C. § 185(a); *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013).

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc., v. Williams,* 482 U.S. 386, 394 (1987) (cleaned up). The Supreme Court "has understood this to be a rule that overrides all possible applicable state law, or, in other words, as a rule of complete preemption." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013). Thus, "to determine whether a purported state-law claim really arises under Section 301, a federal court must look beyond the face of plaintiff's allegations and the labels used to describe her claims and evaluate the substance of plaintiff's claims." *Id.* (cleaned up).

Here, Defendants contend that Owano's claim is preempted because Owano seeks to vacate the Award that was created by the CBA. Zoo Memo. Dismiss at 6;

Union FAC Memo. Dismiss at 7. The Court, posits the Zoo, could not determine whether the Award should be vacated under Illinois law without "an in-depth analysis of the terms of the CBA." Zoo Memo. Dismiss at 6. The Union more specifically argues that, in order for the Court to determine whether there was a violation of the CBA, the Court would have to interpret Article 7, Sections 1 and 5 of the CBA, which address (1) reduction in the workforce; (2) seniority; and (3) being recalled to back to work after a layoff, which the Union contends are the exact issues considered, and decided, in the Award. Union FAC Memo. Dismiss at 7.[4] Therefore, reason Defendants, Owano's claims are inextricably intertwined with consideration of the terms of the CBA between the Union and the Zoo. Zoo Memo. Dismiss at 6; Union FAC Memo. Dismiss at 7.

Owano counters that her attacks on the Award do not require the Court to interpret the CBA, but to the extent it must, it must do so only tangentially. Pl. Zoo FAC Resp. at 6–8; Pl. Union FAC Resp. at 7. The Court, from Owano's perspective, is simply asked to examine how the parties manipulated her work assignments that impacted her seniority. Pl. Zoo FAC Resp. at 6; Pl. Union FAC Resp. at 7. A court, submits Owano, may vacate an arbitration award where the award is contrary to public policy. Pl. Union FAC Resp. at 7–8. Here, the Award, according to Owano, due to the sexual harassment she endured, is contrary to public policy. *Id.* at 7–9 (citing, *inter alia*, *Illinois Dep't of Cent. Mgmt Servs. v. American Fedn. of State, County &*

___

[4]The Union attaches the CBA to its Reply. R. 39-1, CBA. Owano also cites to the CBA in her SAC. *See* SAC ¶ 20. The Court may take judicial notice of the CBA, as Owano's claims rest on it and its authenticity is not in question. *See Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007).

*Mun. Emples*, 699 N.E. 2d 594 (Ill. App. Ct. 1998); *Munizzi v. UBS Fin. Serv.*, 202 N.E.2d 358 (Ill. App. Ct. 2021); *Water Pipe Extension & Bureau of Eng. Laborers Local 1092 v. City of Chicago*, 741 N.E. 2d 1093 (Ill. App. Ct. 2000); *Decatur Police Benevolent & Protective Ass'n Lab. Comm. v. City of Decatur*, 968 N.E.2d 749, 756 (Ill. App. Ct. 2012)).

The Court, viewing the allegations of the SAC in the light most favorable to Owano, as the Court must, finds that Owano's claim in Count I is inextricably intertwined with consideration of the terms of the CBA between the Union and the Zoo and therefore, preempted by the LMRA. That is, Owano alleges that the Union failed to file seniority and recall grievances, resulting in her termination. *See* SAC ¶¶ 16, 20 (citing CBA, Art. 7 § 5). Here, the Court would be required to interpret the CBA to evaluate the propriety of Owan's layoff, as well as the Award.

True, as Owano points out, there exists "a public policy exception to vacate arbitral awards which otherwise derive their essence from a collective-bargaining agreement." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Dep't of Cent. Mgmt. Servs. (AFSCME)*, 671 N.E.2d 668, 673 (Ill. 1996). "[T]he exception is a narrow one and is invoked only when a contravention of public policy is clearly shown." *Id.* However, Illinois courts, rather than focusing on the award itself, "center on whether the CBA, as interpreted by the arbitrator, violates an explicit public policy." *Munizzi*, 202 N.E.3d at 365. Owano here focuses on the award itself, not the arbitrator's *interpretation* of the CBA, and argues that it violates public policy. Even accepting that Owano has identified a "well-defined and dominant public policy," *AFSCME*, 671

N.E.2d at 673, that is, the freedom from discrimination based on sex, *see* Pl. Union FAC Resp. at 9 n.5, Owano has not explained how the arbitrator's interpretation of the CBA violates that policy; indeed, she just does not like the result of the award. And none of the cases cited by Owano in support of her public policy argument touch on the vacatur of an arbitration award when a plaintiff complains that it violates the public policy of being free from sex discrimination. The Court finds that the "narrow" public policy exception does not apply here. Accordingly, the Court finds that Count I is preempted by the LMRA to the extent it is based on common law.

Finally, the Union argues that Owano's only path to state a claim and vacate the Award is to allege a hybrid claim under Section 301 of the LMRA. Union FAC Memo. Dismiss at 7–8. Section 301 "provides a federal rule for contract disputes between employers and labor organizations or between different labor organizations." *Crosby*, 725 F.3d at 800. "When a union employee brings such a suit against his employer for breach of a collective bargaining agreement, the suit is referred to as a hybrid suit because it is comprised of two causes of action that are inextricably interdependent." *Eng. v. Serv. Emps. Int'l Union, Loc. 73*, 2022 WL 4182376, at *7 (N.D. Ill. Sept. 13, 2022) (cleaned up). That is, "[t]he employee must establish both a breach of the collective bargaining agreement and that his labor union breached its duty of fair representation." *Id.* The Union argues that Owano has failed to allege a breach of contract claim against the Zoo, and also that she has failed to allege a breach of the duty of fair representation against the Union, so any such hybrid claim fails. Union FAC Memo. Dismiss at 8–9; *see also* Zoo Memo. Dismiss at 7. Because, for the

reasons discussed below, the Court agrees with the Union that Owano has not adequately pled a breach of the duty of fair representation, a hybrid claim under Section 301 to vacate the arbitration award also fails.

In sum, the Court grants the Defendants' motion to dismiss Count I.

## II.     Breach of Duty of Fair Representation (Count Two)

As an initial matter, the Court must determine what claim Owano actually brings in Count II. The heading states that it is a claim for "Breach of Duty of Fair Representation by [the Union] and Wrongful Employment Termination by [the Zoo] in Collusion with [the Union]." SAC at 12. The SAC then alleges that the Union's "acts and omissions breached [the Union's] duty to fairly represent Owano by intentionally and willfully perfunctorily handing her grievance and arbitration and proximately caused economic, emotional, and mental distress injuries to [Owano]." SAC ¶ 57. As to the Zoo, it alleges that, the Zoo's "collusion with [the Union] achieved the wrongful termination of [Owano's] employment with [the Zoo] and proximately caused injuries to [Owano]." *Id.* ¶ 86.

The Zoo, understandably, interprets the SAC to allege a claim against it for wrongful termination, and argues that that claim, like Owano's claim to vacate the arbitration award, is preempted by the LMRA because it is inextricably intertwined with considerations of the CBA between the Zoo and the Union, as Owano alleges that her employment was terminated as a result of the Award. Zoo Memo. Dismiss at 5. In a footnote in response, Owano takes issue with the Zoo's construction of Count II as a wrongful termination claim, positing that the Zoo "omits from Claim Two's

11

heading the words 'Breach of Duty of Fair Representation'" to "pretend[] here that Claim Two is merely some kind of generic attack on the CBA-derived termination of employment Arbitration Award and therefore preempted by LMRA." Pl. Zoo FAC Resp. at 5 n.3. Therefore, the Court understands Count II to allege a hybrid Section 301 claim against the Zoo. As discussed above, and as detailed more below, the Court finds that such a claim fails because Owano fails to sufficiently plead a breach of the duty of fair representation.

The Court therefore turns to Owano's claim against the Union for breach of the duty of fair representation. "National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 612 (7th Cir. 2001) (cleaned up). However, as the Seventh Circuit has explained, "when individuals join together, the complete satisfaction of all who are represented is hardly to be expected." *Id.* (cleaned up). Yet, "each employee is bound by the union's decision because that is what they bargained for." *Id.* "To help balance the power bestowed upon the union to exclusively represent all employees in employment disputes," a union owes a "concomitant duty of fair representation to each of its members. *Id.* at 612–13 (cleaned up).

A union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997). The question of whether a union's conduct was

discriminatory and whether it was in bad faith must be analyzed separately, although the analysis is related. *Id.* "Whereas the arbitrariness analysis looks to the objective adequacy of the Union's conduct, the discrimination and bad faith analyses look to the subjective motivation of the Union officials." *Id.*

Starting with the arbitrariness prong, a union behaves arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *McLeod*, 258 F.3d at 613. Negligence is not enough to qualify as a breach of this duty. *Jones v. Bull Moose Tube Co.*, 2009 WL 3483804 (N.D. Ill. Oct. 26, 2009). "For a breach to occur, the union must show an egregious disregard for its members' rights." *Id.* (cleaned up).

The Union argues that Owano has failed to include any allegations in the SAC that show that the Union's conduct was arbitrary or that it egregiously disregarded her rights. Union FAC Memo. Dismiss at 10. It points out that, when Owano learned she was not being recalled to work, she told the Union she wanted to grieve not being called back to work, not being retained in employment, and that she had been mistreated and discriminated against based on sex. *Id.* (citing SAC ¶ 22). According to the Union, it "took all actions available to it" by processing a written grievance on Owano's behalf and moving through the grievance procedure, including to arbitration. *Id.* (citing SAC ¶ 23).

Owano retorts that she pled numerous examples of arbitrary conduct on the Union's part, including the fact that the Union and the Zoo "jointly and repeatedly

engaged in work assignments for Owano that sidestepped and therefore violated the CBA." Pl. SAC Union Resp. at 10 (citing SAC ¶ 9). Additionally, "[o]ut of the 58 laid off workers, [Owano] was the only worker not called back to work." *Id.* (citing SAC ¶ 14). And the Union and Zoo manipulated work assignments and manipulated other workers out of seniority. *Id.* (SAC ¶ 17–21). Finally, the Union failed to grieve the Zoo's failure to recall Owano after she was laid off, the Union withdrew a seniority grievance, and failed to advance a "past practices" argument. *Id.* at 11 (citing SAC ¶ 16). These acts, from Owano's point of view "scream arbitrary." *Id.* (citing *inter alia*, *Chambers v. U.I.U. of N. Am. Loc. #655*, 1990 WL 610297, at *2 (N.D. Ind. July 27, 1990) (union's conduct was arbitrary where the plaintiff's union representation did not assist the plaintiff in filing a grievance, did not inform the plaintiff of his rights against his employer, did not submit a brief prior to arbitration, and did not call any witnesses to testify at the arbitration, despite plaintiff's request that he do so); *King v. Corn Prods.*, 1981 U.S. Dist. LEXIS 16675, at *2 (N.D. Ill. Dec. 18, 1981) (plaintiff sufficiently pled arbitrary conduct where union did nothing on the plaintiff's complaint after he gave timely notice of his grievance, and the plaintiff did not know the union was doing nothing until the time to file a grievance had expired)).

The Court agrees with the Union, however, that most of the allegations Owano points to in response are not attributable to the Union, beyond the Union's attempts to enforce the CBA. R. 39, Union FAC Reply at 10. As to Owano's complaints about how the Union handled the grievance process, specifically as to which grievances it filed or withdrew and which arguments it advanced, the Court finds that Owano's

allegations are more similar to those in *Jones*, which the court found to be insufficient to allege arbitrary conduct, than those in *Chambers* or *King*, cited by Owano. Like the court in *Jones*, the Court cannot infer from the allegations in the SAC that the Union showed an egregious disregard for Owano's rights. *See Jones*, 2009 WL 3483804, at *4. As that court noted, a "union is not required 'to take all member grievances to arbitration,' as 'it has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer.'" *Id.* (quoting *McLeod*, 258 F.3d at 613). "The Union had discretion to choose to represent [Owano] in the arbitration in a manner it saw fit." *Id.* Here, if anything, Owano has pled that the Union was negligent in its handling of her grievances, but as stated above, negligence is not enough.

The Court turns to whether the Union acted in bad faith or in a discriminatory manner. "Whether or not a union's actions are discriminatory or in bad faith calls for a subjective inquiry and requires proof that the union acted (or failed to act) due to an improper motive, which caused harm to the employee." *Jones*, 2009 WL 3483804, at *5 (cleaned up).

Owano cites to the same allegations in support of her argument in favor of the Union's arbitrariness, but also points to her many allegations against the "lead welder" who was also a Union member and who she alleges harassed and mistreated her based on her sex. Pl. SAC Union Resp. at 12–13 (citing SAC ¶¶ 8–13). According to Owano, although the lead welder did not have any involvement or control over the grievance and arbitration process, his harassment of her explains the Union's motives

for engaging in bad faith and discriminatory conduct in how it represented her, through "influence, innuendo, and workplace or union meeting gossip." *Id.* at 13. The Union retorts that Owano's arguments related to the lead welder are conclusory—and takes special umbrage with her allegation that the lead welder or the Union found Owano troublesome and outspoken because she is a woman. Union FAC Reply at 11. The Union points out that Owano does not cite any conversations or other forms of communication from the lead welder supporting her conclusory allegations. *Id.* And the Union, relying on the CBA, argues that, even assuming that the lead welder controlled work assignments, he would have been acting at the Zoo's direction, not the Union's. *Id.* at 12–13 (citing CBA Art. 3, § 1).

The Court agrees with the Union that Owano has failed to plead any allegations that allow the Court to reasonably infer that the Union had an improper motive that caused harm to Owano. As in *Jones*, Owano's allegations relating to the Union's bad faith and discriminatory motivations are all conclusory as they relate to the Union. *Jones*, 2009 WL 3483804, at *5.

All in all, the Court finds that Owano has failed to state a plausible claim for breach of the duty of fair representation. Because of this finding, the Court need not determine whether she has adequately pled a breach of the CBA for purposes of her hybrid Section 301 claim.

### III. Sex Discrimination under Title VII (Counts Three and Four)

In Counts III and IV, Owano alleges that the Zoo and Union, respectively, discriminated against her based on her sex, in violation of Title VII. Specifically,

Owano alleges that the Zoo treated Owano differently than her male coworkers based on her sex with respect to her compensations, terms, conditions, and privileges of employment, and thereby deprived her of employment opportunities and adversely affected her status as a zoo employee. SAC ¶ 115 (citing 42 U.S.C. § 2000e-2(a)(1)–(2)). Similarly, she alleges that the Union treated her differently on the basis of sex, which limited and deprived her of employment opportunities and adversely affected her status as a zoo employee. *Id.* ¶ 147 (citing 42 U.S.C. § 2000e-2(c)(1)–(2)). Owano filed charges of sex discrimination against the Zoo and the Union on March 20, 2023. *Id.* ¶¶ 117, 148.

Defendants both move to dismiss Owano's Title VII claims, arguing that they are time-barred because Owano did not file her EEOC charge within 300 days of the last alleged discriminatory act. Zoo Memo. Dismiss at 8–9; Union Memo. Dismiss at 9–10. A plaintiff who brings Title VII claims, has "300 days from the alleged discriminatory or retaliatory act to file a timely charge of discrimination with the EEOC." *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 744 (7th Cir. 2021) (citing 42 U.S.C. § 2000e-5(e)(1)).

As an initial matter, the Zoo argues that 300 days before the filing of Owano's EEOC charge on March 20, 2023 is May 24, 2022, and Owano fails to allege that Defendants engaged in *any* conduct on or after May 24, 2022.[5] Zoo Memo. Dismiss at 8–9. Owano retorts that the 300-day limit must be counted *forward* from the date of

---

[5]Owano also argues in her response to the Union's motion to dismiss that the Union raises the same argument. *See* Pl. Union Resp. at 13–14. However, the Union acknowledges that Owano "must identify a discriminatory act taken by the Union on or after May 22, 2022," Union Memo. at 9, the same date Owano contends the last discriminatory act took place.

the injury, rather than *backward* from the filing of the EEOC charge. Pl. Zoo Resp. at 3. Therefore, she argues, her receipt of the copy of the Award on May 22, 2022 was the triggering event, and because 300 days from May 22, 2022 fell on a Saturday, the last day she could file the EEOC charge was March 20, 2023. *Id.* (citing *Davidson v. Fry*, 1992 WL 122793, at *2 (N.D. Ill. May 22, 1992) ("The limitations period does not begin to run until the plaintiff has discovered his injury."); Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day of the time period falls on a Saturday, . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.")). The Zoo does not address this argument in reply, which the Court interprets as the Zoo conceding (and certainly waiving) the argument. *See In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). Concession or waiver aside, the Court agrees with Owano that, assuming her receipt of the Award constituted an adverse discriminatory action, then her charge of discrimination would be timely.

The Court therefore begins with Owano's argument that her receipt of the Award on May 22, 2022 was the "triggering event" for purposes of the 300-day limitations period, because it was the date "she knew of the adverse discriminatory action ending her employment and also knew she was injured for purposes of . . . her Title VII Claim." Pl. Zoo Resp. at 2–3; Pl. Union Resp. at 13–14. Both Defendants contend that Owano's receipt of the arbitrator's decision cannot be attributed to them, and thus cannot be a "triggering act." Union Memo. Dismiss at 10; R. 60, Zoo Reply at 6.

18

In her responses to both motions to dismiss, Owano contends that she alleged a hostile work environment claim in Counts III and IV. Pl. Zoo Resp. at 4; Pl. Union Resp. at 14–15. Owano points out that "[a] hostile work environment charge is timely as long as any act falls within the statutory time period even if the charge encompasses events occurring prior to the statutory time," since hostile work environment claims, by their nature, involve repeated conduct. Pl. Zoo Resp. at 4; Pl. Union Resp. at 14–15 (both citing, *inter alia*, *Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014)). Therefore, according to Owano, "[t]he delivery of the Arbitration Agreement was the culminating event of a sex-based hostile environment that declared to" Owano that Defendants did not want her "here" and were finally rid of her. Pl. Zoo Resp. at 4; Pl. Union Resp. at 15.

"Under the continuing violation doctrine, a Title VII plaintiff may recover for otherwise time-barred conduct that is part of a single, ongoing unlawful employment practice if at least one related act occurs during the limitations period." *Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015) (cleaned up). But, as the Zoo correctly states in reply, the "continuing violation" doctrine is limited to hostile work environment claims. Zoo Reply at 10 (citing *Reinacher v. Alton & S. Ry. Co.*, 203 F. Supp. 3d 958, 969 (S.D. Ill. 2016); *Garner v. Nat'l Ry. Corp.*, 2019 WL 414711, at *3 (N.D. Ill. Feb. 1, 2019)). Therefore, any disparate treatment claims against Defendants based on an adverse employment action other than Owano's receipt of the arbitrator's decision are time-barred, as Owano does not allege that any occurred on or after May 22, 2022. As Defendants point out—and Owano does not argue to the

contrary—it is well-settled that the arbitration process does not toll the limitations period. R. 61, Union Reply at 5 (*Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Loc. 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 231, 236 (1976) (rejecting argument that the arbitration decision is the trigger date because "utilization of grievance procedures postpone the date on which an allegedly discriminatory firing took place")); Zoo Reply at 6–7, 9 (collecting cases and citing *Int'l Union of Elec.*, 429 U.S. at 231, 236; *Williamson v. Indiana Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("[B]ecause the decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings.")).

Seeming to recognize this obstacle, Owano, as stated above, argues in response that she alleges hostile work environment claims against the Zoo and the Union in Counts III and IV, respectively. Pl. Zoo Resp. at 4; Pl. Union Resp. at 14–15. Putting aside Defendants' arguments as to the sufficiency of Owano's hostile work environment claims, the Court agrees with their contention that, even if Owano had sufficiently alleged a hostile work environment claim against either Defendant, the arbitration decision was not an actionable act that contributed to the alleged pattern of discrimination by either Defendant. Pl. Zoo Resp. at 9; Pl. Union Resp. at 7. As both Defendants point out, the arbitration decision was made by the arbitrator, not by either the Zoo or the Union, and Owano provides no authority in support of attributing an arbitrator's decision to an employer or a union as an act contributing to a hostile work environment. Union Reply at 4–5, 7; Zoo Reply at 8. Even if Owano's

allegations that the arbitrator did the Zoo and Union's "bidding" could be construed to allege that he was Defendants' agent (which Owano does *not* argue in her response to either motion), as stated above, "the decision not to reverse an adverse employment decision is not a fresh act of discrimination." *Williamson*, 345 F.3d at 463. And any allegedly discriminatory actions taken by either the Zoo or the Union (or their agents/employees) as party of the arbitration proceedings necessarily were taken before the issuance of the arbitrator's decision and therefore took place outside the 300-day window. Union Memo. at 10.

Therefore, the Court finds Owano's Title VII claims, whether for disparate treatment or hostile work environment, to be untimely, as all alleged discrimination attributable to Defendants occurred more than 300 days before Owano filed her charges of discrimination with the EEOC. Therefore, the Court need not address Defendants' other arguments in support of dismissal of Counts III and IV.

## IV. Dismissal with or without Prejudice

Both Defendants request that the Court dismiss Owano's complaint with prejudice. On the other hand, Owano requests leave to file a third amended complaint. However, Owano has not explained how a fourth pleading attempt "would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013); *see also Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in ... dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior

complaint."). Because the SAC was Owano's third pleading attempt, the dismissal will be with prejudice. *Bank of Am.*, 725 F.3d at 819 ("[I]n court, as in baseball, three strikes and you're out.").

## Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss. R. [50], [52]. Owano's claims against Defendants are dismissed with prejudice. This civil case is terminated.

Dated: September 30, 2024

United States District Judge
Franklin U. Valderrama